UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CRESTBROOK INSURANCE COMPANY
A/S/O CENTRAL PRAIRIE CO-OP.,

    Plaintiff,

    v.

ECOLAB INC.,

    Defendant.

Case No. 24-1091-TC-RES

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Ecolab, Inc.'s Motion to Exclude or Strike the Rebuttal Report of Plaintiff's Expert Dr. Dirk Maier. ECF No. 74. Plaintiff Crestbrook Insurance Company has filed a response brief in opposition. ECF No. 76. Defendant also has filed a reply in further support of the Motion. ECF No. 78. For the reasons explained below, the Motion is granted in part as unopposed and denied in part. The Court additionally sua sponte modifies certain case management deadlines, including the expert discovery deadline, for the sole purpose of allowing Defendant to depose Dr. Maier.

**I.    BACKGROUND**

Plaintiff originally filed suit against Defendant in state court on April 24, 2024, and Defendant removed this case to federal court on June 5, 2024, more than a year ago. ECF No. 1 at 1 (Notice of Removal). Highly summarized, the claims in this case stem from a fire in a grain bin on the property of Central Prairie Co-Op, Plaintiff's subrogor, which Plaintiff alleges was caused by Defendant's improper performance of fumigation services. *See generally* ECF No. 1-1

at 6-9 (state court Petition). Plaintiff asserts claims for breach of oral contract[1] and negligence. *Id.* Defendant denies liability and asserts various defenses. *See generally* ECF No. 7 (Answer).

### A. The Original and Amended Scheduling Orders

On July 19, 2024, the parties submitted a proposed scheduling order to the Magistrate Judge's chambers, which proposed that Fed. R. Civ. P. 26(a)(2) expert disclosures would be served in three rounds as follows:

- Plaintiff's expert disclosures are due on or before May 6, 2025;

- Defendant's expert disclosures are due on or before June 6, 2025; and

- Plaintiff's rebuttal expert disclosures, if any, are due on or before June 20, 2025.

ECF No. 64-1 at 6 (bolding removed). As the Court explained during the scheduling conference, allowing for a third round of expert disclosures tends to invite eleventh-hour collateral motion practice about the substance of those disclosures and whether they truly constitute proper rebuttal expert opinions, which is what has happened in this case.

Because of this, the Court entered a Scheduling Order that contemplated only two rounds of expert disclosures. Specifically, the Scheduling Order required that Plaintiff's expert disclosures be served on or before February 14, 2025, and that Defendant's expert disclosures be served on or before March 21, 2025. ECF No. 20 at 4. The Court also adopted the parties' proposal for separate deadlines for the completion of fact discovery and expert discovery. *Id.*

On February 3, 2025, the parties filed a Joint Motion to Amend the Scheduling Order. ECF No. 36. The Court granted that Joint Motion and entered the Amended Scheduling Order, which continued to stage expert discovery in the same manner and set the following deadlines:

---

[1] During the process of preparing the pretrial order, Plaintiff clarified that it is now only proceeding on a breach-of-oral contract claim and not a breach-of-written contract claim.

2

- Fact discovery completed on or before April 7, 2025;

- Plaintiff's experts disclosed on or before May 15, 2025;

- Defendant's experts disclosed on or before June 19, 2025;

- Expert discovery completed on or before July 17, 2025; and

- Proposed pretrial order due on or before July 24, 2025.

ECF No. 37 at 2.

### B. Service of Expert Disclosures and Preparation of the Pretrial Order

As required by the Amended Scheduling Order, Plaintiff served its expert disclosures on May 15, 2025. ECF No. 49. The parties stipulated to extensions of certain Amended Scheduling Order deadlines, including a seven-day extension of time for service of an expert report from Plaintiff's expert, Dr. Maier. ECF No. 62 at 3. The parties also stipulated to extensions for some of Defendant's retained experts, including a seven-day extension of time for service of Dr. Benjamin Streifel's expert report, and a July 14, 2025 deadline for service of Jeffrey Tucker's expert report. *Id.*

The parties' proposed pretrial order was due to the Magistrate Judge's chambers on July 24, 2025. *See* ECF No. 37 at 2. The parties timely submitted the proposed pretrial order, via an email to the Magistrate Judge's chambers, which was received by the Court at 5:09 p.m. Section 8(c) addressed "Motions Regarding Expert Testimony." The parties included a lengthy narrative listing each disclosed expert and the topics on which that expert provided testimony. Although Plaintiff listed Dr. Maier, there was no reference to a potential third-round of experts or an additional report from Dr. Maier. Under the pretrial order's Section 7, Discovery, the parties stated in relevant part: "Prior to July 17, 2025, the parties stipulated to discovery occurring beyond the discovery deadline to complete certain depositions. The parties completed depositions on August

3

4, 2025. Discovery is now complete. The parties may require limited, follow-up discovery on issues raised during recent depositions. However, the parties anticipate being able to resolve any outstanding issues between them."

Later that same evening—after the parties submitted the proposed pretrial order—Plaintiff served Dr. Maier's rebuttal expert report. ECF No. 57 (Certificate of Service). Plaintiff states Dr. Maier's rebuttal report "directly challenges several conclusions offered by Ecolab's expert, Dr. Benjamin Streifel ('Streifel'), particularly regarding the performance and output of the Horn Diluphos System ('HDS') used by Ecolab." ECF. No. 76 at 2.

The Court held a final pretrial conference on August 5, 2025. ECF No. 58. At the conclusion of the conference, the parties raised the issue of the disputed rebuttal report. At no time prior to the final pretrial conference had any party requested an extension of the expert discovery deadline, sought a discovery conference with the Court, corrected the representation to the Court that discovery was complete, or otherwise alerted the Court to this issue. The Court directed the parties to meet and confer and stated that the next step likely would be for the parties to request a discovery conference with the Magistrate Judge if they were unable to resolve their disputes concerning Dr. Maier's rebuttal report.

### C.    Plaintiff's Prior Motion for Leave to Serve a Rebuttal Report, ECF No. 60

No party requested a discovery conference with the Magistrate Judge, and the parties did not make any meaningful attempts to meet and confer either, despite the Court's express direction that they do so. *See* ECF No. 70 at 1 n.1 (memorializing the failure based on the parties' statements during the August 25, 2025 status conference). Instead, on August 7, 2025, two days after the final pretrial conference, Plaintiff filed a motion seeking "leave to serve a rebuttal expert report pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii)" and pursuant to Federal Rule of Civil Procedure

4

6(b)(1)(B).  ECF No. 60 at 1.  Among other things, Plaintiff argued it had an absolute right to serve a rebuttal expert report under the timeline set out in Rule 26(a)(2)(D)(ii) because the Scheduling Order and Amended Scheduling Order did not expressly address rebuttal expert disclosures.  *See generally* ECF No. 62.  Defendant opposed the motion but relied on the Fed. R. Civ. P. 37(c)(1) standard for a motion to strike—a motion that, notably, Defendant had not filed.  *See generally* ECF No. 64.  Inexplicably, no party filed the disputed rebuttal expert report in conjunction with the briefing on Plaintiff's motion.

Given these issues and other ongoing to issues with finalizing the pretrial order, the Court convened a status conference on August 25, 2025, to discuss the motion and the third draft of the pretrial order.  ECF No. 67.  As explained on the record during the status conference and memorialized in a subsequent order, the Court denied Plaintiff's motion for multiple reasons, including that "Rule 26(a)(2)(D)(ii) does not require leave of the Court, as Plaintiff conceded during the status conference[,]" and to the extent that Rule 6(b)(1)(B) applied to the request for an extension of time, that rule required both a showing of good cause and excusable neglect, and Plaintiff had failed to address the good-cause standard.  ECF No. 70 at 2-3.

But as the Order noted, this did not resolve the dispute.  Regardless of whether the rebuttal report was timely served (the focus of Plaintiff's motion), Plaintiff had served Defendant with a purported rebuttal expert report that Defendant had not moved to strike or otherwise exclude.  *See id*. at 3 ("Plaintiff has served what it contends is a proper rebuttal expert report, and Defendant has not taken any action to strike or limit that report.").  The Court ordered the parties to meet and confer via videoconference about each portion of the disputed report.  *Id.*

5

### D. Suspension of Remaining Case Management Deadlines and the Filing of Defendant's Motion to Strike, ECF No. 74

The next day, August 26, 2025, the parties moved for an extension of time to file dispositive motions and motions to exclude expert testimony to 50 days from the date the Court rules on the present Motion. ECF No. 72 at 1. The motion explained that the ruling on the then-anticipated motion to strike would impact arguments in both parties' forthcoming *Daubert* motions and in Defendant's forthcoming summary judgment motion. *Id.* at 3. The motion further stated that "[t]he parties agree that to minimize any prejudice from the Rebuttal, if allowed, Ecolab should be entitled to depose Dr. Maier regarding opinions contained in the Rebuttal." *Id.* And the parties acknowledged that "the requested extensions will require a new trial date." *Id.*

The Court granted in part and denied in part the motion. ECF No. 73. Specifically, the Court found good cause to temporarily suspend the deadline for dispositive motions and motions to exclude expert testimony. *Id.* Because the trial date is set based on the dispositive motion deadline, the Court also found good cause to temporarily vacate the June 9, 2026 trial setting. *Id.* But the Court did not find good cause to adopt the lengthy schedule and proposed staging of Dr. Maier's deposition. *Id.* As the Court stated, "[t]he parties are put on notice that if it denies all or part of the motion to strike and allows Dr. Maier's deposition, it will require the deposition to be completed on an expedited basis, and it will reset all remaining deadlines soon after that given the late stage of this case." *Id.* The Court's order also adopted the parties' proposed expedited briefing schedule for this Motion. *Id.*

Defendant filed the present Motion to Strike on August 28, 2025; Plaintiff filed a response brief on September 5, 2025; and Defendant filed a reply on September 8, 2025. ECF Nos. 74, 76, and 78.

## II.     DISCUSSION

Defendant requests that the Court strike the entirety of Dr. Maier's report, which Defendant has briefed on a topic-by-topic basis, color coding the portion of the report that correlates to each disputed topic. *See generally* ECF Nos. 75 (memorandum), 75-3 (color-coded rebuttal report) and 75-6 (chart showing how the six topics correlate to the color-coded portions of the rebuttal report). In response, Plaintiff has submitted a redline copy of a proposed amended rebuttal report that strikes Topics 2, 5, and 6. ECF No. 76-1. Accordingly, the Court grants Defendant's Motion as unopposed as it pertains to Topics 2, 5, and 6.[2]

The remainder of this Order first addresses Defendant's Motion as it pertains to Topics 1, 3, and 4, and then addresses remaining scheduling issues.

---

[2]     During the status conference on August 25, 2025, and as memorialized in a subsequent order (ECF No. 70), the Court ordered the parties "to meet and confer by videoconference on or before August 27, 2025, about each and every disputed portion of the report and to discuss ways in which the parties can address any purported prejudice alleged by Defendant with regard to this report." ECF No. 70 at 3 (bolding removed). Plaintiff contends Defendant refused to meaningfully participate in these meet-and-confer discussions and that if Defendant had done so, Plaintiff would have agreed to withdraw some of the disputed topics, which Plaintiff has now agreed to do anyway in conjunction with the briefing on this Motion. ECF No. 76 at 3 n.1. For its part, Defendant vehemently disputes Plaintiff's account of the parties' meet-and-confer efforts. *See* ECF No. 78 at 2 n.2.

Regardless of the parties' characterization, it is clear that the parties failed to exhaust their required meet-and-confer efforts. Plaintiff should have served an amended report voluntarily if Plaintiff was not prepared to argue that each and every portion of the rebuttal report constituted proper rebuttal material. Defendant spent time briefing issues that are now largely mooted, and the Court spent time reviewing the entirety of that brief and portions of the report that are no longer at issue. As to Defendant, it is not apparent that it offered any compromises during the meet-and-confer efforts, and it likely should have done so. Certain portions of the rebuttal report directly quote from Defendant's expert's report and then appear to address the quoted material.

In sum, the parties have spent time and effort fully briefing two motions involving the rebuttal report when these issues were capable of being resolved or significantly narrowed if the parties had truly engaged in meaningful efforts to meet and confer in good faith. While the parties' failure to comply with the Court's Order requiring them to exhaust their good meet-and-confer obligations is a basis, standing alone, to deny this Motion, the Court nonetheless rules on this Motion on its merits given the late stage of this case.

7

A.     **Legal Standard Governing a Motion to Strike**

Under Rule 26, rebuttal expert testimony is limited to evidence that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). Courts have discretion as to whether to admit or exclude rebuttal evidence. *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005). The Court properly admits rebuttal evidence

> when a party opens the door to that topic. Generally, courts exclude use of a rebuttal expert to introduce evidence more properly a part of a party's case-in-chief, especially if the alleged rebuttal expert is used to introduce new legal theories. However, where the evidence rebuts new evidence or theories proffered in the defendant's case-in-chief, that the evidence may have been offered in the plaintiff's case-in-chief does not preclude its admission in rebuttal. But when a plaintiff seeks to rebut defense theories which Plaintiff knew about or reasonably could have anticipated, the court is within its discretion in disallowing rebuttal testimony.

*Melnick v. TAMKO Bldg. Prods. LLC*, No. 19-CV-2630-JAR-KGG, 2023 WL 2664131, at *2 (D. Kan. Mar. 28, 2023) (quoting *Tuschhoff v. USIC Locating Servs.*, LLC, No. 19-CV-1149-EFM-TJJ, 2021 WL 3489693, at *2 (D. Kan. Aug. 9, 2021) (internal brackets and quotations omitted)).

Rule 26(a)(2)(D) requires the parties to disclose expert testimony "at the times and in the sequence that the court orders." Therefore, if the Court determines that a rebuttal report contains expert opinions that should have been disclosed by a party's original expert disclosure deadline for expert opinions for its case-in-chief, Rule 37(c)(1) applies. *Melnick*, 2023 WL 2664131, at *2. As a sanction for failing to provide information or to identify a witness as required by Rule 26(a) or (e), the party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In this case, the Court need not address substantial justification or harmlessness under Rule 37(c)(1) because it does not find a Rule 26(a) violation on the present record. *See Melnick*,

2023 WL 2664131, at *4. ("Because the Court finds that the complained-of opinions constitute proper rebuttal opinions, it need not decide whether any late disclosure of such opinions is substantially justified or harmless.").[3]

### B.    Characterization of Disputed Topics

Defendant contends the remaining disputed portions of Dr. Maier's report (Topics 1, 3, and 4) violate Rule 26(a)(2)(D) because these Topics are not limited to evidence solely to contradict or rebut evidence on the same subject matter identified by Defendant's expert.[4]  *See* ECF No. 75 at 2.  Defendants object on a Topic-by-Topic basis, but, as the color-coding makes clear, many of

---

[3]    Plaintiff does not address substantial justification or harmlessness under Rule 37(c)(1). *See generally* ECF No. 76.  If the Court had found a Rule 26(a) violation, it would have been Plaintiff's burden to make this showing. *See Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, No. 19-4007-DDC, 2024 WL 277893, at *22 (D. Kan. Jan. 25, 2024) (citing *Hirpa v. IHC Hosps., Inc.*, 50 F. App'x 928, 932 (10th Cir. 2002)).

[4]    Defendant's opening paragraph also argues that the report is "unsanctioned and untimely" and "in direct contravention of this Court's guidance at the Scheduling Conference and the deadlines set forth in the Scheduling Order[.]"  ECF No. 75 at 2.  The argument section of Defendant's brief, however, focuses exclusively on Defendant's position that the rebuttal expert report extends beyond the scope of permissible rebuttal testimony and should therefore be stricken. ECF No. 75 at 3-10.

As explained at the status conference on August 25, 2025, while it was not the Court's intention to allow for a third round of expert disclosures, neither the Scheduling Order nor the Amended Scheduling Order explicitly addresses rebuttal expert disclosures.  There is support for Plaintiff's position that in this instance, the timing under Rule 26(a)(2)(D)(ii) governs and would serve to render Dr. Maier's rebuttal report timely served (so long as the report contains true rebuttal testimony). *See generally Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 664 (10th Cir. 2018) ("Instead, courts analyze what a scheduling (or 'case management') order on disclosures says (or does not say) about rebuttal testimony to find a relevant 'court order' for Rule 26(a)(2)(D) purposes.  If nothing in the scheduling or case management order speaks to rebuttal, then 26(a)(2)(D)'s 30-day rule applies.").

Although Defendant expands on this argument in its reply brief, the substance of the memorandum in support of the motion does not meaningfully raise a timeliness objection on this basis.  Even if it did, the Court would find that Rule 26(a)(2)(D)(ii) authorized Plaintiff to serve a rebuttal expert report for essentially the same reasons explained during the August 25, 2025 status conference when the Court also stated that it would be inclined to find that Rule 26(a)(2)(D)(ii) governed the timing of service of the rebuttal report.

these Topics appear in different portions of the report or are contained in non-contiguous paragraphs.

Plaintiff largely declines to address the report on a Topic-by-Topic basis, criticizing Defendant's approach as narrowly focusing on "whether the experts used identical language." ECF No. 76 at 4. Instead, Plaintiff explains that Dr. Maier's rebuttal report, as a whole, is aimed at correcting Dr. Streifel's misunderstanding of the HDS and its output, which is central to Dr. Streifel's opinions. *Id.* Specifically, Plaintiff argues that Dr. Streifel presents "three opinions premised on the assumption that the HDS produces a stable gas[,]" and Plaintiff then lists these three opinions, with citations to where they appear in Dr. Streifel's report. *Id.* As Plaintiff states, "[t]hese opinions presuppose that the HDS produces a stable gas similar to atmospheric air" and that "Streifel analogizes that, if Maier were correct, atmospheric air would separate into its constituent gases inside a grain bin." *Id.* at 4-5. According to Plaintiff, Dr. Maier's report refutes these claims, citing to the HDS patent and scientific literature. *Id.* at 3.

While the Court will address each of the disputed Topics below, as characterized by Defendant, in general, courts are disinclined to narrowly construe Rule 26(a)(2)(D)(ii)'s language that rebuttal testimony is testimony "intended solely to contradict or rebut evidence *on the same subject matter* identified by another party . . . ." *Strong v. City & Cnty. of Denver*, No. 21-CV-00461-GPG-KLM, 2023 WL 11806482, at *2 (D. Colo. July 7, 2023) (quoting Rule 26(a)(2)(D)(ii) and further stating that the "term 'same subject matter' is not defined by Rule 26 or the Advisory Committee Notes. Courts in this District have rejected narrow interpretations of same subject matter and have refused to place an overly restrictive interpretation on this operative

10

phrase." (internal brackets and some internal quotations omitted)).[5]  Here, the Court concludes that the remaining Topics in Dr. Maier's report appear to address and rebut the same subject matter set out by Dr. Streifel in his report.

### 1. Topic 1 (Defendant's pink highlighting)

In a section entitled "Rebuttal of Professor Dirk Maier," Dr. Streifel states that "Dr. Maier performs a series of calculations of application rates/times" regarding the "calculations of phosphine concentration and settlement of phosphine." ECF No. 75-4 at 22. Dr. Streifel then states that Dr. Maier's analysis "created two possible scenarios: . . . Scenario 1: Gas-Tight Grain Bin" and "Scenario 2: Leaky Grain Bin[.]" *Id.* at 23. With regard to Scenario 1, Dr. Streifel concludes: "It is not possible to achieve the required level of gas delivery in the timeframe of the fumigation performed by Ecolab staff. This gas-tight grain bin scenario is clearly implausible for multiple reasons, as the Fumigation Management Plan and Dr. Maier describe leakage as being likely from the incident grain bin, but even if it were perfectly sealed, the HDS 200 unit is not specified to generate such high pressures or gas flow rates." *Id.* at 23.

---

[5] *See also PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-CV-5649 (LAK) (BCM), 2025 WL 1276513, at *22 (S.D.N.Y. May 2, 2025) ("However, district courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language. Thus, a rebuttal expert is permitted some leeway in how he or she explains, counteracts, repels, or disproves the opinion being rebutted." (internal citations and some internal quotations omitted); *Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*, No. 2:18-CV-529-JLB-NPM, 2022 WL 4017049, at *3 (M.D. Fla. Sept. 4, 2022) ("The term 'same subject matter' as used in Rule 26(a)(2)(D)(ii) has been construed broadly."); *Giusto v. Int'l Paper Co.*, No. 1:19-CV-00646-SDG, 2021 WL 3603374, at *7 (N.D. Ga. Aug. 13, 2021) (collecting cases and explaining that although the Federal Rules of Civil procedure do not define the term, "other courts have construed it broadly"); *Fed. Trade Comm'n v. Innovative Designs, Inc.*, No. 2:16-CV-01669-NBF, 2018 WL 3611510, at *2 (W.D. Pa. July 27, 2018) ("While the scope of a rebuttal report is limited to the same subject matter encompassed in the opposing party's expert reports, district courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language.").

Topic 1, as defined by Defendant, spans two non-contiguous sections of Dr. Maier's report. *See, e.g.,* 75-6 at 2 (Defendant's color-coded chart showing that Topic 1 appears on page 2, lines 1-8 and on lines 21-29). The opening paragraph of Dr. Maier's report—the first disputed portion—states:

> Dr. Streifel states in his rebuttal report "this gas-tight grain bin scenario is clearly implausible for multiple reasons, as the Fumigation Management Plan and Dr. Maier describe leakage as being likely from the incident grain bin, but even if it were perfectly sealed, the HDS 200 unit is not specified to generate such high pressures or gas flow rates". This and related statements to the HDS 200 reflect Dr. Streifel's lack of understanding how this machine is designed to perform and his lack of practical experience of how grain bins are fumigated. The "high pressure" he is referring to is internal to the HDS 200 and does not apply once the fumigant enters the grain bin which is at atmospheric pressure.

ECF No. 75-3 at 3. Dr. Maier then references materials from the company that created the HDS unit that he contends demonstrate Dr. Streifel's lack of understanding of the HDS unit. *Id.* On its face, Dr. Maier's analysis appears to directly rebut conclusions reached by Dr. Streifel.

Defendant, however, argues that Dr. Maier mischaracterizes Dr. Streifel's conclusions, and therefore, Dr. Maier is not actually rebutting any opinion or evidence offered by Dr. Streifel. ECF No. 75 at 4. Defendant argues that "[r]ead in context, Dr. Streifel opines that the HDS 200 could not generate the high pressure in the grain bin necessary to support Dr. Maier's scenario of self-concentrating phosphine." *Id.* at 5. And because of this, Dr. Streifel does not opine that the HDS externally created high pressure—as is suggested in the rebuttal report—and therefore, Topic 1 is not proper rebuttal. *Id.*

This is too narrow of a reading of Topic 1 and the requirements of Rule 26(a)(2)(D)(ii). Dr. Maier quotes directly from Dr. Streifel's report and then addresses that quotation—that Dr. Maier believes the statement and others "reflect Dr. Streifel's lack of understanding how this

12

machine is designed to perform and his lack of practical experience of how grain bins are fumigated." ECF No. 75-3 at 3. Dr. Maier then states that Dr. Streifel's reference to high pressure—i.e., "the HDS 200 unit is not specified to generate such high pressures or gas flow rates"—is internal to the HDS unit. *Id.* This testimony concerns and rebuts the same subject matter discussed in Dr. Streifel's report, which is the operation and Dr. Streifel's understanding of the HDS unit. To the extent Defendant believes that Dr. Maier has misunderstood or misstated Dr. Streifel's conclusions, Defendant is free to inquire about this at a deposition or to cross-examine him at trial. However, Topic 1 goes to Dr. Maier's position that Dr. Streifel does not understand the HDS unit as set forth in Dr. Streifel's report, and Dr. Streifel's understanding of the system is central to his opinions. The Court finds Topic 1 constitutes proper rebuttal testimony.

### 2. Topic 3 (Defendant's green highlighting)

Defendant's position on Topic 3 is largely the same. Topic 3, as described by Defendant, spans two non-contiguous portions of the report. ECF No. 75-6 (Defendant's color-coded chart showing that Topic 3 appears on page 3, lines 1-17; 29-30 to page 4, lines 1-25). The bulk of this section discusses how the HDS is described in the relevant patent, which describes the process by which the HDS operates, and concludes with Dr. Maier stating that "[t]he HDS does not create a new product that binds phosphine to air and as a result would prevent phosphine molecules to cause insect life stages within or outside grain kernels to be killed when exposed to the label specified minimum concentration and time." *See generally* ECF No. 75-3 at 4-5.

Defendant contends that Dr. Streifel does not opine that HDS creates a new product or a new product that acts in the manner Dr. Maier alleges. ECF No. 75 at 6. Defendant argues that Dr. Streifel "identifies the output of the HDS 200 the way the VAPORPH3OS label, the VAPORPH3OS applicator's manual, the HDS 200 literature, and Plaintiff identifies it: as a

13

mixture of phosphine and air." *Id.* at 7. Throughout his report, Dr. Streifel cites to the HDS patent. *See, e.g.,* ECF No. 75-4 at 10, 18, 20, 35-36 (listing the patent under the heading of "Technical Documents and Information").

Despite the lack of an explicit citation to Dr. Streifel's report, Plaintiff argues that information concerning the patent is proper rebuttal because it clarifies the function and operational output of the HDS, which Plaintiff contends is necessary to rebut Dr. Streifel, who Plaintiff alleges is "mistaken in his premise[.]" ECF No. 76 at 7. Plaintiff contends that the description of the HDS contradicts the foundational premise of Dr. Streifel's opinions. *Id.* at 6-7. For the reasons Plaintiff explains and given the fact that the bulk of the section is again aimed at addressing how the HDS operates (which Dr. Maier alleges Dr. Streifel misunderstands), Topic 3 constitutes proper rebuttal testimony on the same subject matter identified in Dr. Streifel's report—namely Dr. Streifel's understanding of the HDS system, which underlies Dr. Streifel's opinions.

### 3.    Topic 4 (Defendant's blue highlighting)

Topic 4—again, as defined by Defendant—encompasses an entire section of Dr. Maier's report, titled "Movement of Gas Molecules in a Stored Grain Mass." ECF No. 75-3 at 5. The section is approximately 3.5 single-spaced pages with accompanying charts. Dr. Maier's opening paragraph quotes Dr. Streifel's report criticizing Dr. Maier's conclusions. ECF No. 75-3 at 6. The next sentence states: "While his calculations regarding distance and time scale are impressive, they simply do not apply to the scenarios of a stored grain mass whether the structure is 100 ft tall or wide, or sealed, leaky or unsealed." *Id.* The Court understands this to be a reference to Dr. Streifel's calculations, although Dr. Maier does not cite to any specific portion of Dr. Streifel's report.

Dr. Maier then goes on to explain that while he is not aware of literature specific to phosphine, "literature does exist about gas molecules concentrating gravitationally at the bottom of stored grain bins." *Id.* at 5-6. The following paragraphs and charts appear to provide that supporting authority. However, the closing paragraph of this section states, "[t]hus, the conclusion of Dr. Streifel that gas molecules cannot move inside a stored grain mass as a function of air movement caused by increasing and decreasing headspace temperatures on a daily basis is not consistent with what can be observed based on empirical measurement of gas molecules such as $CO_2$ and $PH_3$." *Id.* at 8.

Defendant argues that Dr. Maier is not attempting to rebut any of Dr. Streifel's opinions but instead is using Dr. Streifel's criticisms of Dr. Maier's report to bolster Dr. Maier's original opinions. ECF No. 75 at 9. Specifically, Defendant notes that the information Dr. Maier cites consists of his own studies, which would have been known to Dr. Maier at the time of his original report. *Id.*

The standard for permissible rebuttal evidence, however, is not whether information was known to the expert at the time of the original report. *See Melnick*, 2023 WL 2664131, at *4 ("Defendant argues that because these fact deposition transcripts were available to Kestner at the time of his original expert report but not included therein, the opinions regarding them in Kestner's rebuttal report should be stricken as improper rebuttal opinions. However, that is not the standard to determine whether rebuttal testimony is proper."). Again, "the mere fact that evidence may have been included in the original expert report but was not, does not preclude its admission in a rebuttal report when . . . it is offered to rebut new theories proffered by Defendant." *Id.*

Topic 4 presents a closer call. If Dr. Maier's report were intended solely to address the issue of a lack of citations to supporting literature, the Court would have struck the analysis

because it is not true rebuttal testimony. While Dr. Maier's report again does not cite to a specific portion of Dr. Streifel's report, the Court understands the section as both citing to literature supporting Dr. Maier's gravitational concentration theory *and* addressing Dr. Streifel's referenced conclusions. While Defendant focuses on the issue of the missing supporting literature, Defendant did not meaningfully address the closing paragraph of this section, which specifically references why the report directly addresses Dr. Streifel's conclusions. *See generally* ECF No. 75 at 9-10. This Topic—just as with the other disputed Topics—does not attempt to advance new theories or methodologies and instead appears to rebut testimony on the same subject matters addressed by Dr. Streifel. Because of this, the Court, in its discretion, denies Defendant's Motion to Strike Topic 4.

### C. Modifications to Scheduling Order Deadlines and Next Steps

The parties previously represented that they "agree that to minimize any prejudice from the Rebuttal, if allowed, Ecolab should be entitled to depose Dr. Maier regarding the opinions contained in the Rebuttal." ECF No. 72 at 3. For this reason and for the reasons explained in the Background section of this Order, the Court finds good cause to sua sponte modify the expert discovery deadline for the limited purpose of allowing Defendant to depose Dr. Maier regarding the amended rebuttal expert report. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Seale v. Peacock*, 32 F.4th 1011, 1030 (10th Cir. 2022) (explaining that the good-cause standard requires a showing that the scheduling deadlines cannot be met despite. . . diligent efforts." (internal quotations omitted)).

As stated above, the Court previously suspended the trial date and other deadlines pending a ruling on this Motion. Accordingly, the Court imposes the following schedule:

1. On or before **September 29, 2025**, Plaintiff must serve an amended rebuttal report consistent with the proposed amended version submitted to the Court in conjunction with this briefing, ECF No. 76-1.

2. Dr. Maier's deposition must occur on or before **October 17, 2025**.

3. If the parties need to make any final revisions to the proposed pretrial order to address Dr. Maier's amended rebuttal report and deposition *only*, the parties shall submit a revised draft of the pretrial order on or before **October 22, 2025.**

4. The deadline for filing dispositive motions and motions to exclude expert testimony is reset for **November 14, 2025**.

4. The trial is reset for **August 4, 2026, at 9:00 a.m.** in Kansas City, Kansas.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude or Strike Rebuttal Report of Plaintiff's Expert Dr. Dirk Maier, ECF No. 74, is **GRANTED** as unopposed in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Court imposes the deadlines and trial setting as set out above.

**IT IS SO ORDERED.**

Dated: September 25, 2025, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge